979 So.2d 1007 (2008)
D.M. & D.M., Appellants,
v.
DEPARTMENT OF CHILDREN AND FAMILY SERVICES and the Guardian Ad Litem Program, Appellees.
Nos. 3D06-2280, 3D06-2291.
District Court of Appeal of Florida, Third District.
February 27, 2008.
*1008 Kevin Coyle Colbert, Miami; E. Joseph Ryan, Jr., Sunny Isles Beach, for appellants.
Hillary S. Kambour; Karla Perkins, Miami, for appellees.
Before GERSTEN, C.J., and COPE and LAGOA, JJ.[1]
PER CURIAM.
This is an appeal by the father (D.M.) and mother (D.M.) of a final judgment terminating their parental rights. We affirm.
At the time of the entry of final judgment, the minor child L.M. was three years old and the minor child J.D.M. was six months old. At trial, the father disclaimed any parental rights to the infant, J.D.M. Accordingly we affirm the termination *1009 of the father's parental rights to J.D.M.
The parents maintain that the remainder of the termination judgment is not supported by competent substantial evidence. After careful consideration, we conclude that the evidence is legally sufficient.
As we interpret the final judgment, the trial court terminated the parental rights solely on the basis of paragraph 39.806(1)(c), Florida Statutes (2005). That statutory provision allows termination of parental rights when "the continuing involvement of the parent or parents in the parent-child relationship threatens the life, safety, well-being, or physical, mental or emotional health of the child irrespective of the provision of services."[2]
In December 2004, the Department of Children and Family Services ("the Department") received a report of domestic violence and child neglect. The Department placed the mother and the child L.M. in a shelter.[3]
In late December 2004, the mother returned to the home. There was an argument between the mother and the father wherein the father hit the mother with a stick and the mother stabbed him in response. The police were called. L.M. was placed in foster care. Criminal charges were filed against both parents, including domestic violence and child neglect. Both parents were released on pretrial release.
The Department filed a dependency petition as to L.M.[4] The dependency allegations included domestic violence, drug abuse, and child neglect. The mother was awarded supervised visitation. A case plan was approved by the court in April 2005.
On appeal, the mother maintains that the case plan should have been written in Spanish, but was written in English. The mother and case worker, however, testified that the case plan was explained to her in Spanish and she acknowledged that she understood it.
The parents were referred to the Spectrum Program for drug treatment. The father initially refused all services, saying he did not need them. Neither parent followed up the drug treatment referral with the Spectrum Program. The mother, however, attended the Alliance for Psychological Services, for domestic violence.
During 2005 the mother became pregnant with J.D.M. The mother subsequently was incarcerated for violation of pretrial release in her criminal case because of two positive tests for cocaine. In February 2006, she delivered J.D.M. while incarcerated. The evidence supported the conclusion that the mother used cocaine while pregnant with J.D.M.
In December 2005, the father was arrested for possession of cocaine. The father denied that J.D.M. was his child but scientific testing confirmed the father's paternity of J.D.M. The father was also briefly transferred to a mental health facility for an evaluation of his competency.
*1010 The trial court found "that in light of all the facts, that irrespective of the services offered by the Department and those not offered, the Parents' continuing involvement in the parent-child relationship threatens the life, safety, well being and physical, mental and emotional health of the children." The parents argue that this finding is not supported by competent substantial evidence.
We have carefully considered the parents' argument on this point, but conclude that under the circumstances of this case, the finding is adequately supported. Drug abuse was the key problem leading to the charges of child neglect. The record supports the conclusion that both parents failed to pursue the referral for drug abuse at the Spectrum Program.
Both parents were incarcerated for use of cocaine, which violated their pretrial release. The father was arrested for possession of cocaine and incarcerated. The mother had two positive tests for cocaine, which were at a time when she was pregnant, and her pretrial release was revoked. In light of the parents' refusal to seek treatment pursuant to the referral, the record supports the "irrespective of the provision of services" termination judgment.
Alternatively, the parents argue that the judgment must be reversed for procedural error. The judgment indicates that the trial court performed independent research in legal periodicals regarding an issue in the case. The parents complain that they were not given notice that the trial court had obtained, and would consider, these materials. That argument is without merit. A trial court is allowed to conduct its own legal research in legal materials, such as case reporters, statutes, treatises, and law reviews. In this case, the trial court located a law review note and a website which collects the statutes of all states. Nothing precludes a trial court's search for additional legal authorities not cited by the parties.
However, the trial court also located articles in Wikipedia, the British Medical Journal, and other medical or scientific treatises regarding a psychological issue in the case. It is clear that the trial court regarded this as being permissible background research and not information assembled to form the basis of a decision in the case. These articles were cited in the judgment. We agree with the parents that it was error for the court to conduct this independent research.
In this case the trial judge was sitting as the trier of fact. In making the rulings in the case, the court was necessarily confined to the record made by the parties. If the court desired further research regarding the psychological issue, then the correct procedure would have been to request that the research be done by the parties, or by the court-appointed psychologist (with notice to the parties).
While there was error, we are satisfied that it was harmless and that the trial court would have entered the judgment for termination of parental rights under paragraph 39.806(1)(c) whether or not this research had been done. We distinguish Guardian Ad Litem Program v. J.D., 920 So.2d 1225 (Fla. 3d DCA 2006), because in this case we are satisfied that the error was harmless. In J.D., the panel's reversal necessarily reflects a conclusion that the error was harmful, not harmless.
We have carefully considered the other points on appeal, but conclude that no reversible error has been demonstrated.
Affirmed.
NOTES
[1] Chief Judge Gersten did not hear oral argument but participated in the decision.
[2] The petition for termination of parental rights also sought termination under paragraph 39.806(1)(e), which authorizes termination "when a child has been adjudicated dependent, a case plan has been filed with the court, and the child continues to be abused, neglected, or abandoned by the parents." It appears that the trial court did not reach this issue.
[3] The minor child J.D.M. had not yet been born.
[4] The dependency petition also involved half siblings, but the proceedings relating to the half siblings are not relevant here.